UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
BRIDGET LIVINGSTON,

                                    Plaintiff,          **MEMORANDUM OF DECISION**
                                                        **AND ORDER**
                                                        03-CV-4871 (DRH) (ETB)

                - against -


ADECCO,

                                    Defendant.
-------------------------------------------------------------X
**A P P E A R A N C E S :**

**ZABELL & ASSOCIATES, LLP**
Attorneys for Plaintiff
500 Bi-County Boulevard, Suite 112 N
Farmingdale, New York  11735
By:  Saul D. Zabell, Esq.

**JACKSON LEWIS LLP**
Attorneys for Defendant
58 South Service Road, Suite 410
Melville, New York  11747
By: Roger H. Briton, Esq.
     Kathryn J. Russo

**HURLEY, District Judge:**

            Plaintiff Bridget Livingston ("Plaintiff") filed the present Title VII and New York

State Human Rights Law ("NYSHRL") action against her employer, defendant Adecco USA

Inc., incorrectly sued herein as "Adecco" ("Adecco"), claiming that she was discriminated

against based on her race and retaliated against for agreeing to be a witness in a co-worker's

discrimination proceeding.  Adecco has moved for summary judgment pursuant to Federal Rule

of Civil Procedure 56.  For the reasons that follow, Adecco's motion is granted and this case is

dismissed in its entirety.[1]

***BACKGROUND***

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted. Plaintiff is an African American female and is currently employed by Adecco. Plaintiff was initially hired as a temporary employee in August 1999. She was hired for a permanent position in May 2000. Plaintiff works in the Accounts Receivable Department. Her title is Remittance Processor.

On November 28, 2000, Plaintiff was injured in a car accident. As a result of the accident, Plaintiff was out of work on a medical leave of absence until May 2001. When she returned to work, Plaintiff requested a reduction in her work schedule, at her doctor's recommendation, because she had a herniated disc in her back. Plaintiff's work schedule was thereafter changed from a 9:00 a.m to 5:00 p.m. schedule to a 9:00 a.m. to 4:00 p.m. schedule. Plaintiff contends that she was also given a fifteen minute grace period "as a reasonable accommodation for acknowledging her disability and thus her occasional lateness was excused." (Pl.'s 56.1 Counterstatement of Material Facts ¶ 7.)

*I.*     *Plaintiff's Discrimination Claims*

Upon returning to work, Plaintiff agreed to start in a new position and thereafter began reporting to Donna Specht ("Specht"). At this point, the parties' versions of the relevant facts diverge. Plaintiff claims that she was "transferred" to Adecco's "Wire Transfer Group," (Compl. ¶ 19), with the understanding that her new duties would be expanded to include wire

---

[1] Plaintiff has withdrawn her claims of disability discrimination. Accordingly, these claims are hereby dismissed.

transfers, specifically electronic fund payments ("EFTs"). (Pl.'s 56.1 Counterstatement of Material Facts ¶ 11.) She alleges that she was told she would be taking over the position of "Anna Kolondy," who was the sole person in charge of EFTs at the time. (*Id.* ¶ 14.) Although Plaintiff concedes that the "Wire Transfer Group" was not actually a separate department, she contends that because it consisted of specific individuals, it had the "characteristics of a separate and distinct group within Plaintiff's department." (*Id.* ¶ 12.) Plaintiff interpreted this reassignment to entitle her to a "promotion commensurate with the additional job duties and responsibilities." (*Id.* ¶ 13.) Thus, she assumed her new position would include a grade change or salary increase. (Pl.'s Dep. dated June 22, 2004 ("Pl.'s Dep.") at 54.)

Adecco asserts that Plaintiff was not really transferred because she continued to work in the Accounts Receivable Department as a Remittance Processor. (Def.'s Local Rule 56.1 Statement ¶ 15.) Rather, Adecco contends Plaintiff was merely reassigned. (*Id.* ¶ 16.) The reassignment involved changing Plaintiff's immediate supervisor from Theresa Mazzara ("Mazzara") to Specht and "slightly" modifying her duties. (*Id.* ¶ 17.) Specifically, Plaintiff was assigned to work on EFTs, "one type of customer payment . . . which had a smaller customer base (as opposed to check payments which had a much broader costumer base)." (*Id.*) Adecco claims that the reassignment was made because "Plaintiff had displayed difficulties performing her job duties while working for Mrs. Mazzara. Specifically, she made numerous errors, displayed low productivity, and had difficulty meeting deadlines. [Adecco] believed that if Plaintiff focused her efforts on one single type of payment, her work performance would improve." (*Id.* ¶ 18.)

Plaintiff alleges that after she began reporting to Specht, Specht began to single

her out, due to her race, for excessive socializing and poor work performance. Plaintiff further

claims that other similarly situated Caucasian employees were treated differently in that they

were not reprimanded for engaging in the same behavior. Although Plaintiff admits that

Adecco's time sheets reflect that Plaintiff was late for work 58 times from March through

December 2002, Plaintiff contends that her tardiness was excused as she was given a fifteen

minute grace period due to her "disability." (Pl.'s 56.1 Counterstatement of Material Facts ¶ 25.)

She further claims that on days she was late, she always made up her time at the end of the day.

(*Id.* ¶ 24.)

Moreover, Plaintiff contends that a coffee cart stopped at her desk during

breakfast and that other employees would congregate around the cart and carry on conversations

with Plaintiff. (*Id.* ¶ 34.) Plaintiff maintains that despite the fact that many other employees

socialized around her desk during this time, she was the only one verbally counseled. (*Id.* ) In

July 2002, Christina Falcone ("Falcone"), Specht's supervisor, asked the woman who operated

the cart not to stop at Plaintiff's desk anymore.

On September 5, 2002, after being reprimanded by Specht, Plaintiff hung up a

sign in her cubicle that read "Please do not stand at this desk. This is not a test. It is a strong

request. I have eyes all around me and I am being monitored. I am not allowed to hold any

conversations so for my best interest please do not stand at this desk unless you are given

permission to or its [sic] concerning business." (Def.'s Local Rule 56.1 Statement ¶ 36.) Specht

thereafter removed the sign after being instructed to do so by the Vice President of Employee

Relations. (*Id.* ¶ 38.)

Plaintiff subsequently put up another sign in her cubicle warning co-workers not

to talk to her while she was working.  (*Id.* ¶ 39.)  Ed DeGennaro, "who Plaintiff believed to be a Director or Vice President,"  took the sign down, put his hand in Plaintiff's face and told her that he did not want to hear what she had to say.  (*Id.*)  Because Plaintiff felt "nervous" about what had transpired with DeGennaro, she called Lois Cooper ("Cooper") in Human Resources.

On September 9, 2002, Plaintiff and Cooper met in Cooper's office.  Plaintiff related the incident with Mr. DeGennaro and also complained about "being monitored and singled out" by Specht and Falcone.  (*Id.* ¶ 40.)  Plaintiff never stated why she felt she was being targeted other than to state generally she was being "singled out for some reason."  (*Id.* ¶¶ 42-44.)  Plaintiff admits as much and merely adds that she "never stated that her race was not the reason she was being monitored."  (Pl.'s 56.1 Counterstatement of Material Facts ¶ 42.)

On September 13, 2002, Cooper, Falcone, and Specht met with Plaintiff.  Plaintiff expressed her concerns about being "monitored at work" and Falcone and Specht discussed Plaintiff's tardiness, work issues, and socializing.  (*Id.* ¶ 47; Def.'s Local Rule 56.1 Statement ¶ 47.)  In addition, they "clarified their expectations for Plaintiff's work performance."  (Def.'s Local Rule 56.1 Statement ¶ 47.)  Plaintiff was "stunned" and "baffled" because the meeting's focus had switched from Plaintiff's complaints about Specht to Specht's and Falcone's criticisms of Plaintiff.  (*Id.* ¶ 48.)  In addition, Plaintiff felt "like an adolescent" because she was advised to contact her supervisor if a co-worker stopped at her desk to socialize.  (*Id.* ¶ 49.)  After the meeting, Cooper sent Plaintiff a memorandum allegedly reflecting their discussions.  Because Plaintiff disputed the accuracy of the memorandum, she refused to sign it.  Although she did not claim so at the time, she now asserts that she felt like she was "being singled out and targeted" because she was black.  (Pl's Dep. at 101-02.)  She reached this conclusion "based upon [her]

feeling, based upon how [she] was being treated without any other explanation being given." (*Id.* at 101.)

In April 2003, Specht gave Plaintiff a performance evaluation for the calendar year 2002. Plaintiff's overall rating was "Does Not Meet All Expectations." Adecco contends that "[f]actors that contributed to this rating included Plaintiff's excessive tardiness, excessive socializing during work hours, poor documentation of work, failure to complete work in a timely fashion; and failure to follow-up on work projects, among other things." (Def.'s Local Rule 56.1 Statement ¶ 61.) Plaintiff claims that before the performance evaluation, Specht indicated that her raise "should be 4 percent." (Pl.'s Dep. at 125.) During the evaluation, however, Plaintiff learned that her raise would be two percent. Plaintiff did not receive a performance evaluation in 2001 (for the year 2000) because she had been out on medical leave. She also did not receive an evaluation in 2002 (for the year 2001) because none were given due to budgetary issues.

On July 25, 2003, Plaintiff was given a "Final Warning" because she circulated an inappropriate e-mail to two co-workers. Plaintiff contends that she again was being singled out as "other non-similarly situated employees in the department send poems and/or pictures to each other, but they did not receive written warnings." (Pl.'s 56.1 Counterstatement of Material Facts ¶ 75.)

In 2004, Plaintiff received a one percent salary increase. Plaintiff testified that everyone in her department received a one percent increase that year. (*Id.* at 132-33.) Adecco maintains that due to a company wide salary freeze, there were no annual merit increases given in 2004. (Def.'s Local Rule 56.1 Statement ¶ 73.)

## II.      *Plaintiff's Retaliation Claims*

Plaintiff claims that in August 2002, she received a letter stating that she had been identified as a witness in a co-worker's discrimination proceeding pending before the New York State Division of Human Rights.  Plaintiff testified that the letter was given to her by a co-worker, Donna Tecarr, and that it was in a white envelope inside an interoffice envelope.  (Pl.'s Dep. at 62.)  When she opened the interoffice envelope, she saw that the white envelope was open, leading her to believe that the letter may have been read by others.  Plaintiff claims that she asked Ms. Tecarr where the letter came from and Ms. Tecarr allegedly responded that it came from Theresa Murphy, one of Plaintiff's former supervisors.  The letter did not provide any information about the name of the case or the name of the complainant.  Plaintiff testified that she did nothing when she received the letter.  Soon thereafter, she received a telephone call from an investigator at the New York State Division of Human Rights, who asked her a few questions about the job duties of Vivian Pinnock, the complainant.

Plaintiff contends that after receiving the letter, "she began having difficulties in the office with other Adecco employees."  (Pl.'s 56.1 Counterstatement of Material Facts ¶ 84.) "Specifically, she was accused of being negligent and began to be blamed for things she did not do such as talking excessively on the phone or carrying on conversations with other employees during the work day."  (*Id.*)

## DISCUSSION

## I.      *Applicable Law and Legal Standards*

### A.      *Summary Judgment*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only

appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

   To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Board of Elections of the City of New York*, 224 F.3d 149, 157 (2d. Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or

other areas of litigation." *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

**B.     The McDonnell-Douglas Burden-Shifting Methodology**

In *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-511 (1993).

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappears, leaving the sole remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that race discrimination was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

The burden of establishing a prima facie case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is

a burden of production, not persuasion, and involves no credibility assessments. *Reeves*, 530 U.S. at 143.

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp.2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 Fed. Appx. 350 (2d Cir. 2004). Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n. 8 (7th Cir. 1987)), and may not "sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). A discrimination claimant may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons

for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bombero v. Warner-Lambert Co.*, 142 F. Supp.2d 196, 203 n.7 (D. Conn. 2000) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999), and citing *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)), *aff'd*, 9 Fed. Appx. 38 (2d Cir. 2001).

However, to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998.

## II.   *Plaintiff Fails to Raise a Genuine Issue of Material Fact as to her Discrimination Claims*

To establish a prima facie case of discrimination under Title VII, a plaintiff must show that: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Adecco does not dispute that Plaintiff has established the first two elements of her prima facie case, viz. that she was a member of a protected class and that she was qualified. Adecco does contend, however, that Plaintiff cannot prove that she suffered an adverse employment action under circumstances giving rise to discrimination.

The Supreme Court has stated that in order to be actionable under federal discrimination laws, an adverse employment action must be "tangible" or "material." *Burlington*

*Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  A "tangible employment action" connotes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id.*  "Materially adverse" employment actions can also include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, . . . or other indices . . . unique to a particular situation."  *Feingold v. N.Y.*, 366 F.3d 138, 152 (2d Cir. 2004) (internal quotations omitted).  However, a "bruised ego," a "demotion without change in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are all insufficient to constitute a tangible or material adverse employment action.  *Burlington Indus., Inc.*, 524 U.S. at 761 (internal quotations and citations omitted).

Under this standard, Plaintiff's Complaint and other submissions can be fairly read to allege that she suffered three instances of discriminatory treatment at the hands of Adecco (not including alleged acts of retaliation, which will be addressed *infra*): (1) Plaintiff was not given a salary or grade increase in connection with her "transfer"; (2) Plaintiff was singled out by her supervisors because of her race; and (3) Plaintiff only received a two percent raise as opposed to three or four percent due to an allegedly inaccurate performance evaluation. Each event is addressed in turn.

### A.     *Plaintiff's "Transfer" Was Not an Adverse Employment Action*

Plaintiff alleges that she suffered an adverse employment action in connection with her "transfer" to Adecco's "Wire Transfer Group" in May 2001.  Plaintiff does not claim that there was any reduction in pay or reduction in job title due to the transfer.  Instead, she complains that she was not given a salary or job grade increase.

-13-

Specifically, Plaintiff alleges that upon reassignment, her job responsibilities changed significantly. She further claims that because she was told she came "highly recommended" and would be "in charge of" certain duties and/or co-workers, (Pl.'s Mem. at 6), she assumed her reassignment would include a "promotion commensurate with the additional job duties and responsibilities." (*Id.* at 7.)

Plaintiff offers no evidence demonstrating that she was either promised or entitled to a job grade change or salary increase in connection with her reassignment. Adecco, on the other hand, has submitted the sworn affidavit of Falcone (Specht's supervisor at the time) wherein she states that she "was involved in the decision to reassign Plaintiff" to Specht and that the "reassignment did *not* involve a change in job title, job grade or salary." (Aff. of Falcone, dated Oct. 6, 2004, ¶ 3 (emphasis added).) Adecco further offers the affidavit of Cooper, Vice President, Employee Relations & Diversity at Adecco, who avers that "[d]ue to a company-wide salary freeze, there were no annual merit increases given in 2002 (for employees' 2001 performance) [and] in 2004 (for employees' 2003 performance.)" (Aff. of Lois Cooper, dated Oct. 6, 2004 ("1st Cooper Aff."), ¶¶ 6-7.)

In response, Plaintiff argues that despite Adecco's claim of a salary freeze, Specht "testified she received a four percent (4%) salary increase during the very same year in question." (Pl.'s Mem. at 7.) In fact, upon review of Specht's deposition testimony, when asked what her salary increase was for that year, Specht testified "I'm going to guess four percent, because I'm not sure." (Specht Dep. dated July 8, 2004 ("Specht Dep.") at 6.) Moreover, Cooper states in her affidavit that she has reviewed Specht's payroll records which indicate that Specht did *not* receive a merit increase in 2002 (for her 2001 work performance). (1st Cooper

Aff. ¶ 4.)

Plaintiff further claims that "Kolondy [sic], a Caucasian employee in charge of EFTs prior to Plaintiff's reassignment, received a grade and salary increase upon being reassigned by Defendant." (Pl.'s Mem. at 7.) Plaintiff offers no admissible evidence, however, to support this statement. In response, Adecco has submitted a second affidavit by Cooper, wherein she states that "Adecco's corporate records concerning Anna Kholodny's employment do not reflect that she was reassigned, or promoted, at any time from 2002 through 2004. In addition, her employment records do not reflect that she was given any salary increases associated with a promotion or reassignment." (Reply Aff. of Lois Cooper, dated Nov. 19, 2004, ¶ 2.)

In sum, other than Plaintiff's own conclusory allegations, Plaintiff has failed to set forth any facts demonstrating her entitlement to a grade change or salary increase in connection with her reassignment. Accordingly, Plaintiff has failed to raise a triable issue of fact that her "transfer" rose to the level of an adverse employment action.

**B.    *Plaintiff's Claims of Being Singled Out by Her Supervisors, Her 2003 Performance Evaluation, and Her Concomitant Two Percent Raise***

Plaintiff claims that she was targeted by Specht because of her race. She further claims that she received a poor performance evaluation, which led to a raise lower than what she anticipated. Because these claims are interrelated in that Adecco asserts that her poor evaluation was based on the same factors she was allegedly singled out for, they will be discussed in tandem.

Plaintiff alleges that she was counseled for tardiness, alleged poor work performance, and excessive socializing. (Pl.'s Mem. at 7.) She further alleges that she was the

-15-

only African American employee under the supervision of Specht at the time and the only employee counseled for allegedly committing the same infractions as "non similarly-situated Caucasian employees."[2]  (*Id.*)  Essentially, Plaintiff's theory is that because "white employees . . . were never reprimanded for committing the same infractions . . . race had to be the primary reason [she] was being singled out."  (Aff. of Plaintiff, dated Nov. 4, 2004, ¶ 15.)  In support of this conclusion, Plaintiff contends that "Falcone treated white employees different from black employees. When I would ask Falcone a question, she would communicate the answer to the other person in the room as if I were incapable of understanding because of my race."  (*Id.* ¶ 17.)

In April 2003, Specht evaluated Plaintiff's performance for the calendar year 2002.  Plaintiff was given the rating of  "Does Not Meet All Expectations" and  learned that her raise would be two percent.  Plaintiff "disagree[s]" with the performance evaluation and asserts that "she should have received a higher rating."  (Pl.'s Mem. at 11.)  Moreover, Plaintiff asserts that although Specht never promised her a four percent raise, prior to Plaintiff's evaluation, Specht indicated that Plaintiff's raise "should be 4 percent."  (Pl.'s Dep. at 125.)  In that regard, Plaintiff contends that "[w]hile no other employees received an overall rating of 'Does Not Meet All Expectations,' at the time of the performance evaluation, Plaintiff was the only African American employee reporting to Specht. . . . All Caucasian employees reporting to Specht received performance ratings of 'Meets Expectations' or 'Meets or occasionally exceeds expectations,' and all received four (4) percent salary increases."  (Pl.'s Mem. at 12.)

As an initial matter, the Court notes that to the extent Plaintiff alleges that Adecco's excess scrutiny of her and/or her negative performance evaluation constituted adverse

_____

[2]  Presumably, Plaintiff intended to say "similarly-situated Caucasian employees."

employment actions, neither claim suffices absent accompaniment by adverse consequences. *See, e.g.*, *Scafidi v. Baldwin Union Free School Dist.*, 295 F. Supp. 2d 235, 239 (E.D.N.Y. 2003); *Hunter v. St. Francis Hosp.*, 281 F. Supp. 2d 534, 544 (E.D.N.Y. 2003). Here, Plaintiff argues that as a result of her poor work evaluation, her salary increased by only two percent, as opposed to all other employees who reported to Specht, whose salaries increased by three or four percent. She claims that although she was the only employee to receive a rating of "Does Not Meet All Expectations," she was also the only African American employee who reported to Specht.

Although there is some authority that the denial of a duly earned raise constitutes an adverse employment action for the purpose of establishing a prima facie case of discrimination, *see, e.g., Hunter*, 281 F. Supp. 2d at 544; *Cooper v. Morgenthau*, No. 99 Civ. 11946, 2001 WL 868003, at *8 (S.D.N.Y. July 31, 2001), it is not completely clear whether those cases would apply here, where Plaintiff did receive a raise, just not one as high as other employees or as high as she allegedly deserved. Even assuming arguendo, however, that a rational factfinder could view Plaintiff's two percent raise as evidence of a materially adverse employment action, and assuming further that Plaintiff could state a prima facie case of discrimination based on her assertions of being singled out and being the only African American employee who reported to Specht and who received a negative work evaluation (in light of her de minimis burden), Adecco has easily met its burden of articulating a non-discriminatory reason for its actions.

As noted previously, an employer's burden of showing a legitimate non-discriminatory reason for its actions is not particularly onerous. Here, Adecco claims that

Plaintiff's poor work evaluation was based on her excessive tardiness, her excessive socializing, and her poor work performance. These reasons are undeniably legitimate and non-discriminatory reasons for Plaintiff's evaluation and her concomitant low raise. *See*, *e.g.*, *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) ("An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action."); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001) ("[P]laintiff's lateness is a legitimate, nondiscriminatory reason for his discharge.") (collecting cases).

Once an employer has articulated a legitimate, non-discriminatory reason for its actions, the plaintiff then has the burden of showing that the stated reason was pretextual, and that more likely than not discrimination motivated the adverse employment action. Plaintiff does not dispute that at all times relevant to the Complaint, she never complained of racial discrimination. Nonetheless, Plaintiff claims pretext behind Adecco's stated reasons for her poor evaluation based on the following: (1) she was counseled for tardiness despite the fact that her lateness was excused due to her "disability"; and (2) she was the only African American employee under the supervision of Specht at the time and the only employee counseled for allegedly committing the same infractions as Caucasian employees. Both arguments fail to demonstrate pretext.

### 1. *Claims Related to Plaintiff's Alleged Tardiness*

Plaintiff concedes that her shift began at 9:00 a.m. and that she arrived at work late "on several occasions." (Pl.'s Mem. at 8.) Plaintiff argues, however, that "she was given a fifteen (15) minute grace period as a reasonable accommodation for her acknowledged

-18-

disability," i.e., her herniated disc. (*Id.*) Further, she claims that she always made up her time at the end of the day and that "[o]ther Caucasian employees would regularly arrive late to work and were not counseled in the same manner as Plaintiff. In stark contrast to Defendant's treatment of Plaintiff, Donna Tecarr, . . . a Caucasian employee, who was also supervised by Specht, testified she had been late to work several times and has never been spoken to or written up for arriving late to work." (*Id.*)

Adecco has submitted Plaintiff's time sheets, signed by Plaintiff, for March through December 2002. These time sheets reveal that Plaintiff was late 58 times during this ten-month period. (Specht Aff. Ex. 1.) Although in some of these instances, Plaintiff was late by less than fifteen minutes, on many of them, she was late in excess of fifteen minutes. Moreover, although the dissimilar punishment of similarly situated employees committing similar disciplinary infractions, if correlated with race, can indicate pretext behind the employer's stated reasons for the punishment, Plaintiff presents no evidence whatsoever in support of her claim that she was the only employee counseled for tardiness, much less evidence to justify an inference that race was a factor. In fact, despite Plaintiff's reference to testimony by Donna Tecarr, Plaintiff failed to submit *any* deposition testimony of Ms. Lecarr with her motion papers. Furthermore, the evidence that is before the Court contradicts Plaintiff's assertion, to wit, Specht testified that Donna Tecarr was never late for work and that her work record reflects as much. (Specht Dep. at 37.)

Finally, to the extent Plaintiff contends that her alleged disparate treatment must have been related to her race because there was no other explanation or because she "felt" race was a factor, such conclusory allegations are clearly insufficient to raise a triable issue of fact as

to discrimination.  *See, e.g., Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) ("Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient."); *Little v. New York*, No. 96 Civ. 5132, 1998 WL 306545 at *6 (E.D.N.Y.  June 8, 1998) ("It is well settled that a plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn. . . . Accordingly, a Title VII plaintiff cannot 'defeat a motion for summary judgment by offering purely conclusory allegations of discrimination.'"), aff'd mem., 173 F.3d 845 (2d Cir.1999); *Lediju v. New York City Dep't of Sanitation*, 173 F.R.D. 105, 114 (S.D.N.Y. 1997) ("Plaintiff's speculation and generalities (e.g., discrimination is self-evident) . . . is insufficient even to state a prima facie case).  Accordingly, summary judgment is warranted on this claim.

### 2.    *Claims Related to Plaintiff's Alleged Socializing and Poor Work Performance*

Plaintiff claims that Adecco singled her out because of her race by counseling her for excessive socializing and poor work performance.  The Court will address Plaintiff's allegations in turn.

### a.    *Plaintiff's Alleged Socializing*

Plaintiff asserts that Doris Cooper, a Caucasian employee, socialized with Ruth Mui, an Asian employee and Wendy Harley, a Caucasian employee "for any given amount of time without reprimand."  (Pl.'s Mem. at 9.)  Under Second Circuit law, where a plaintiff seeks to make out a case of discrimination "by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated."

*Shumway v. United Parcel Service, Inc.,* 118 F.3d 60, 64 (2d Cir. 1997).  Furthermore, "such an employee must be similarly situated in all *material* respects--not in all respects."  *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir. 2001 ) (emphasis in original).  In order for employees to be similarly situated in all material respects, "a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards."  *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999)).  In addition, Plaintiff must demonstrate that the similarly situated employees engaged in comparable conduct.  *Id.*

Here, other than Plaintiff's own conclusory statements, Plaintiff has produced no evidence as to whether Ms. Mui or Ms. Harley were similarly situated to her or whether or not they were ever reprimanded.  Adecco, on the other hand, has submitted proof that Doris Cooper, a white Remittance Processor, *was* counseled by Specht for excessive socializing.  (Specht Aff. ¶ 7.)  Accordingly, to the extent Plaintiff seeks to establish pretext based upon Adecco's alleged disparate treatment of other similarly situated employees, her claim must fail.

The only arguable evidence Plaintiff proffers in support of her claim of pretext with regard to her alleged socializing is the deposition testimony of Specht.  Specht testified that Plaintiff spent an excessive period of time at her desk talking to five employees, who Specht identified by name and race as Claudia Jones (black), Elizabeth Halacheck (white), Elizabeth Haglich (white), Sonia Mickel (black), and Vivian Pinnock (black).  (Specht Dep. at 54.)  She further testified that although she spoke with Plaintiff about all five of these employees, presumably about Plaintiff's socializing with them, she did not speak to the five employees individually.  (*Id.* at 54-56.)  She stated that "Claudia, Elizabeth, and Elizabeth all worked for

another department. I felt it was Beijai's responsibility to discourage them from standing at her desk." (*Id.* at 54-55.) When asked if she spoke to either of the Elizabeth's supervisors, she responded that she had not. (*Id.* at 56-57.) She was not asked whether she spoke with Claudia's supervisor. When asked whether she spoke with Sonia's and Vivian's supervisors about their socializing with Plaintiff, she responded affirmatively. (*Id.* at 55-56.)

Plaintiff argues that because both Elizabeths are white and Sonia and Vivian are black, this testimony demonstrates that "Specht treated other similarly situated employees to Plaintiff, but for their race differently. Specht reported the African American employees to their supervisors when something was wrong, but did not report Caucasian employees to their supervisors for committing the same infractions." (Pl.'s 56.1 Counterstatement of Material Facts ¶ 56.) Specht's testimony does not demonstrate, however, that Specht treated other employees, who were *actually* similarly situated to Plaintiff, differently.[3] Rather, it demonstrates, if anything, that white employees whom Specht did not supervise were treated differently than black employees whom she did not supervise. And even this conclusion is tenuous. Although Specht testified that she spoke to Vivian's and Sonia's supervisors but did not speak to the Elizabeths' supervisors, she was never expressly asked whether she spoke to Claudia's supervisor. This is significant because Claudia was the one African American woman in the same department as the two Elizabeths. Thus, it is logical to conclude that if Specht did not speak to the Elizabeths' supervisors, she did not speak to Claudia's supervisor either, especially in light of Specht's testimony that she did not speak with these three women individually

---

[3] A plaintiff is not required to show disparate treatment; rather, it is merely *one* way for a plaintiff to prove discrimination. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001).

because she thought it was "Beijai's responsibility" to take care of them.  In any event, the Court

need not resolve this issue as it is Plaintiff's burden to show pretext and Plaintiff fails to proffer

any evidence to fill this gap in Specht's testimony.  Plaintiff cannot create a question of fact by

eliciting incomplete testimony and then draw conclusions based upon speculation.

In addition, Plaintiff presents no evidence as to which departments these five

women worked for, whose job it was to supervise them, or whether Specht, who was not their

supervisor, had any obligation to reprimand them or report them to their supervisors.  Therefore,

it is entirely possible that Specht had a duty to talk to Sonia and Vivian's supervisors but not to

the Elizabeths' supervisors.  Because Plaintiff has elicited no facts on this issue, based upon the

present record, it is impossible to tell.  Thus, the Court finds that Specht's testimony, standing

alone, does not raise a triable issue of fact that Adecco's decision to counsel Plaintiff for

excessive socializing was based on her race.

### b.    *Plaintiff's Alleged Poor Work Performance*

Plaintiff claims that she was the only employee reprimanded for poor work

performance and that she was the only African American employee to report to Specht.  The

present record, however, does not support this contention.  Although Plaintiff has not submitted

any evidence to support her claim of disparate treatment, Adecco has proffered evidence that

Rosalie Labita, a white Remittance Processor, was in fact counseled by Specht for poor work

performance.  (*Id.* ¶ 14.)  Moreover, the mere fact that Plaintiff subjectively believes that she

performed well and thus deserved a better evaluation is insufficient to create a triable issue of

fact on pretext.  *See, e.g.*, *Venti v. EDS*, 236 F. Supp. 2d 264, 276 (W.D.N.Y. 2002)

("[P]laintiff's subjective perceptions of her own technical abilities are not sufficient to show

pretext and avoid summary judgment.").

        The only arguable evidence Plaintiff proffers in support of her claim that her poor work evaluation was really a subterfuge for discrimination is the following excerpt from the deposition testimony of Specht:

> Q. Did you ever have any discussions with Christina Falcone regarding African Americans in the workplace?
>
> A. Discussions with – could you explain what you mean?
>
> Q. Any discussions at all with Christina Falcone regarding African Americans in the workplace.
>
> A. Just performance issues, Bridget Livingston.
>
> Q. So the only discussions that you had about African Americans dealt with performance issues; is that correct?
>
> A. Yes.
>
> Q. You only discussed African Americans in the context of having performance issues; is that correct?
>
> A. Can you repeat that? I'm not sure what you mean.
>
> Q. You only discussed African Americans in the context of having work performance issues?
>
> [Adecco's Attorney]: Object to form.
>
> Q. It's kind of what you just said. You can answer.
>
> A. Yes.

(Specht's Dep. at 68-69.)

        This line of inquiry, which is not a model of clarity, merely establishes that the only discussions Specht had with Falcone regarding Plaintiff, the only African American to report to Specht, were about Specht's performance issues with Plaintiff. Indeed, the objection

-24-

raised by Adecco's counsel was well taken. Plaintiff's attempts to infer discriminatory animus from this testimony is belied by the fact that Plaintiff was the *only* African American employee under Specht's supervision. Thus, any conversations Specht had about Plaintiff were necessarily the only conversations she had about African Americans she supervised in the workplace.

Moreover, to the extent there is any question about the relevance of this testimony, this testimony is far too thin to permit a rational trier of fact to conclude that Specht harbored animus against African Americans or that Plaintiff was given a poor work evaluation or otherwise subjected to discrimination because of her race. In light of the fact that Plaintiff was *not* the only employee counseled by Specht for excess socializing or poor work performance as white employees were also counseled, (*see* Specht Aff. ¶¶ 7, 14), and the fact that Plaintiff has failed to produce *any* other evidence of discrimination, this testimony, standing alone, cannot defeat Adecco's motion. *Cf. Abdu-Brisson*, 239 F.3d at 468 ("While it is true that the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination, we have held that when other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance.") (internal quotation marks and citations omitted).

In sum, Plaintiff has failed to produce sufficient evidence to support a rational finding that the non-discriminatory reasons proffered by Adecco for the challenged employment actions were pretextual. Accordingly, Plaintiff's discrimination claims are dismissed.

### III.  *Plaintiff Fails to Raise a Genuine Issue of Material Fact as to her Retaliation Claims*

Plaintiff alleges that Adecco retaliated against her by singling her out and giving her a lower raise than other employees after she received a letter stating that she had been

identified as a witness in a co-worker's discrimination proceeding pending before the New York State Division of Human Rights.  To establish a prima facie case of retaliation under Title VII, an employee must show: "'(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'"  *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)), *cert. denied*, 540 U.S. 1016 (2003).  Here, Plaintiff cannot establish a prima facie case because there is no evidence in the record from which a reasonable trier of fact could conclude that Adecco was aware that Plaintiff had received this letter.  *See, e.g.*, *Little v. National Broad. Co.*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002) ("Defendants must have knowledge of the protected activity to be able to engage in retaliation.") (internal quotation marks and citations omitted).

Plaintiff testified that Donna Tecarr handed her a closed interoffice envelope which contained an open white envelope.  (Pl.'s Dep. at 62.)  Inside the white envelope was the letter from the New York State Division of Human Rights.  (*Id.*)  Plaintiff further testified that she asked Ms. Tecarr where the letter came from and Ms. Tecarr allegedly responded that it came from Theresa Murphy, one of Plaintiff's former supervisors.  (*Id.*)  Plaintiff also stated that she never discussed the letter with anyone at Adecco and that no one at Adecco ever discussed the letter with her.  (*Id.* at 63-64.)

Plaintiff argues that because the letter "was open and placed inside an Adecco office envelope . . . it is apparent that Defendant had knowledge of the contents of the letter."

(Pl.'s Mem. at 16.)  In support of this conclusion, Plaintiff cites two cases for the proposition that a plaintiff need only establish defendant's "general corporate knowledge" to state a prima facie case of retaliation.  (*Id.*)  Neither case helps Plaintiff's position.

In *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)), *cert. denied*, 540 U.S. 1016 (2003), it was undisputed that the defendant-Board knew of plaintiff's protected activity.  *Id.* at 116.  The Second Circuit held that the lower court erred when it instructed the jury that to satisfy the knowledge requirement, plaintiff was also required to show that the Board's agents knew of plaintiff's protected activity.  *Id.* at 116-17.  Rather, the court held that "general corporate knowledge that the plaintiff has engaged in a protected activity" is all that is necessary.  *Id.* at 116.  The *Gordon* case is distinguishable from the present case in that here, Adecco disclaims having any knowledge of the letter and there is no evidence of "general corporate knowledge."  Moreover, there is nothing in the *Gordon* case which indicates that an open envelope provides "general corporate knowledge."

In *Galdieri-Ambrosini v. National Realty Dev. Corp.*, 136 F.3d 276 (2d Cir. 1998), the Second Circuit found that the defendant could not have retaliated against plaintiff for complaining about gender discrimination where none of plaintiff's complaints "adverted to gender."  *Id.* at 292.  Thus, the defendant could not have understood, or reasonably understood, that plaintiff was engaging in a protected activity.  *Id.*  Other than citing this case for the proposition that "general corporate knowledge" is sufficient, Plaintiff does not explain, and the Court is unable to ascertain, how this case supports her position.

Moreover, Adecco has submitted proof that neither Specht, Falcone, nor Cooper was aware of the letter until Adecco received Plaintiff's EEOC charge and that none of them saw

the actual letter until it was produced by Plaintiff during discovery. (Def.'s Local Rule 56.1 Statement. ¶ 83.) Adecco has also offered the deposition testimony of Ms. Tecarr wherein she states that she was responsible for distributing the mail and that although she "could have given [Plaintiff] the letter," she does not remember actually handing it to her. (*Id.* ¶¶ 81-82.)

The Court finds that Plaintiff's reliance on the mere fact that the envelope containing the letter was both open and inside an interoffice envelope insufficient, standing alone, to raise a triable fact as to Adecco's knowledge. Plaintiff has presented no evidence on Adecco's mail policies, specifically, with regard to opening envelopes and using interoffice envelopes. Thus, it may be Adecco's policy to open all envelopes containing employees' mail, for security purposes or some other reason that does not entail actually reading the contents. Furthermore, although Plaintiff doesn't claim that Theresa Murphy, her former supervisor, read the letter, to the extent that argument is implicit in Plaintiff's testimony that Ms. Tecarr told her that she got the letter from Theresa Murphy, this statement is inadmissible hearsay as Plaintiff offers it for its truth and Ms. Tecarr testified that she has no recollection of this incident.[4] In addition, Plaintiff has failed to offer any testimony by Ms. Murphy to fill in this void. In sum, because Plaintiff has elicited no evidence in support of her claim that Adecco had knowledge of her purported protected activity, and because "knowledge cannot be shown by 'inferences alone,'" *see Little*, 210 F. Supp.2d at 384 (quoting *Gordon v. Kings County Hosp. Ctr.*, No. 95-CV-3006, 2000 WL 1868091, at *6 (E.D.N.Y. Oct. 25, 2000)), Plaintiff's retaliation claim must

---

[4] In Plaintiff's Memorandum of Law, Plaintiff states that the interoffice envelope was labeled "Theresa Murphy." (Pl.'s Mem. at 16.) However, the citations to the record offered in support of this statement do not support this assertion. Rather, the record merely reflects that Plaintiff testified that Ms. Tecarr told her she got the letter from Theresa Murphy. (*See* Pl.'s Dep. at 62.)

be dismissed.  *See Mack*, 326 F.3d at 129 (affirming lower court's dismissal of retaliation claim where there was no evidence that supervisor was aware of plaintiff's complaints or that as result of such awareness, he engaged in or escalated hostile work environment).

**IV.**    ***Plaintiff's New York State Human Rights Law Claims Are Dismissed***

As mentioned previously, Plaintiff also claims that Adecco violated the NYSHRL.  This claim too, must fail.

Discrimination and retaliation "claims under the NYSHRL are analyzed identically to claims under . . . Title VII," and "the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII."  *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999).  Thus, NYSHRL claims are generally considered "in tandem" with Title VII claims, *see Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999), and a district court need not explicitly evaluate a plaintiff's NYSHRL claims where it has thoroughly analyzed the plaintiff's Title VII claims.  *Smith*, 196 F.3d at 363 n.1.  In the present case, as Plaintiff has failed to state either a discrimination or retaliation claim under Title VII, she has ipso facto failed to state these claims under the NYSHRL as well.

*CONCLUSION*

For all of the above reasons, Adecco's motion for summary judgment is GRANTED as to all of Plaintiff's claims, and this case is accordingly DISMISSED in its entirety.  The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

Dated: September 21, 2005
      Central Islip, New York           /s_____
                                       Denis R. Hurley,
                                       United States District Judge